NORTHLAND INSURANCE COMPANY, Respondent,

v.

CHET'S TOW SERVICE, INC., Appellant.

No. WD 43113.

Missouri Court of Appeals, Western District.

Feb. 19, 1991.

Joseph Y. DeCuyper, Kansas City, for appellant.

Mark V. Bodine, Kansas City, for respondent.

Before SHANGLER, P.J., and KENNEDY and FENNER, JJ.

FENNER, Judge.

Appellant, Chet's Tow Service, Inc. (Chet's), appeals the judgment of the trial court against it and in favor of Respondent, Northland Insurance Company (Northland), in the amount of $1,200.00 actual damages and $5,000.00 punitive damages on Northland's Petition for Replevin of a trailer. Chet's also appeals its judgment against Northland in the amount of $340.00 on Chet's Counterclaim for towing and storage charges.

The original Petition for Replevin against Chet's was filed by Aubrey Trucking, Inc., on December 19, 1988. On June 26, 1989, Aubrey Trucking, Inc., filed an amended Petition and a Motion for Substitution of Parties requesting that Northland be substituted for Aubrey Trucking in that title to the trailer in question had been transferred to Northland. There was no opposition to the Motion for Substitution and it was granted by the court on July 6, 1989. The matter of substitution was discussed again on the first day of trial, January 22, 1990, at which time Chet's advised the court that there was no objection to Northland being substituted for Aubrey Trucking.

The circumstances giving rise to the dispute herein began on October 19, 1988, when a trailer owned by Aubrey Trucking became disabled on Interstate 29 near Platte City, Missouri. Chet's was contacted and towed the trailer to Chet's tow lot in Independence, Missouri.

After towing the trailer, Chet's made arrangements with the owner of the contents of the trailer, Marc Express, to deliver the contents to Wyoming. The tires of the trailer having been burnt off, the trailer itself was loaded on a "lowboy" and driven to Wyoming. The trailer was taken from Independence to Wyoming on October 28, 1988. The contents of the trailer were unloaded in Wyoming and the trailer was

then returned to Chet's lot in Independence, arriving on October 30, 1988.

Upon the trailer's return from Wyoming, Northland was advised by Chet's that the charge for towing and storage of the trailer was $1,020.00. An effort was made by Northland to take possession of the trailer with a cashier's check in the amount of $1,020.00 being presented to Chet's. Delivery of possession was refused and this litigation ensued.

In its first point on appeal, Chet's argues that it had a lien on the trailer under §§ 430.020 and 430.082 RSMo 1986, for labor, services, materials and storage, which gave it the right to retain possession. Northland concedes that Chet's had a statutory lien which gave it a right to possession of the trailer. However, Northland argues that Chet's wrongfully retained possession by refusing tender of payment on its lien. Northland argues that by so doing, Chet's converted the trailer.

■ Proof of conversion can be shown in one of three ways: (1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner; (3) by a refusal to give up possession to an owner upon demand, even though the defendant's original possession of the property was proper. *Houston v. Columbia Federal Savings and Loan Association*, 569 S.W.2d 211, 214 (Mo.App. 1978).

■ On appeal the judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Evidence was presented to show that when the contents of the trailer were delivered to Wyoming, the owner of the cargo, Marc Express, paid Chet's not only for transporting the cargo to Wyoming, but also for originally towing the trailer from its disabled location near Platte City to Chet's lot in Independence.

Marc Express was billed and paid Chet's $600.00 for the use of two wreckers and one dolly in towing of the trailer from Platte City to Independence. Thereafter, when Northland inquired of Chet's as to their charges in relation to the trailer, Northland was informed that the tow bill was $700.00 plus $20.00 per day for storage.

On November 7, 1988, Northland asked Chet's what their total bill was for towing and storage of the trailer. Chet's advised Northland that the total bill was $1,020.00. Northland arranged for Midwest Tow Service (Midwest) to pick up the trailer from Chet's and gave Midwest a cashier's check to deliver to Chet's in the amount of $1,020.00.

Midwest went to Chet's lot to pick up the trailer on November 7, 1988, and presented the cashier's check. Chet's refused to accept the check and advised Midwest that payment would have to be made in cash and that the bill was now $1,200.00 instead of $1,020.00. Chet's did not explain the increase in their bill, but did say that since Northland had sent another tow company to pick up the trailer, payment would have to be made in cash. The first explanation of the additional charge was offered at trial when Chet's presented testimony that a mistake had been made on the billing of $1,020.00 in that a $200.00 charge for use of a converter dolly had not been included.

At the charge of $20.00 per day, the maximum that Chet's was entitled to for storage on November 7, 1988, was $340.00 for 17 days. October 19 to November 7 minus October 28 to October 30, while the trailer was traveling to and from Wyoming. Chet's had already been paid $600.00 for towing the trailer from Platte City to Independence. Even if it was to be believed that Chet's was entitled to the $200.00 charge for the converter dolly that Chet's claimed had been overlooked, Northland's tender of $1,020.00 was more than adequate to satisfy Chet's lien on the trailer as of November 7, 1988.

Chet's refusal to deliver possession of the trailer upon Northland's tender of a

cashier's check for $1,020.00 was a conversion of Northland's property.

Chet's first point is denied.

 In its second point, Chet's argues that the trial court erred by awarding Northland damages because Northland was not the real party in interest and did not have standing to bring a claim for damages.

If not presented by motion or responsive pleading, the defense of capacity to sue is waived. Rule 55.27(g); *Executive Jet Management & Pilot Service, Inc. v. Scott,* 629 S.W.2d 598, 611 (Mo.App.1981).

Not only did Chet's not present the defense of capacity to sue by way of motion or responsive pleading, it advised the court that it had no objection to Northland's substitution as plaintiff in the cause.

Chet's second point is denied.

In its third point, Chet's argues that the trial court erred by awarding punitive damages because they were not supported by the evidence.

 Conversion is an intentional tort. *Benson v. Jim Maddox Northwest Imports. Inc.,* 728 S.W.2d 668, 669 (Mo.App. 1987). In an intentional tort action, punitive damages may be awarded if the defendant's conduct is shown to be outrageous because of defendant's evil motive or reckless indifference to the rights of others. *Burnett v. Griffith,* 769 S.W.2d 780, 789 (Mo. banc 1989).

 The wrongful withholding by Chet's of Northland's trailer under the circumstances herein was outrageous because of the evil motive evidenced by Chet's actions. The evidence in support of the verdict shows that Chet's lied about its charges, changed the amount due when Northland sought to take possession of the trailer without valid explanation, refused a cashier's check as payment because a competitor had been sent to take delivery of the trailer and attempted to double bill for its towing service.

Chet's third point is denied.

 In its fourth and final point, Chet's argues that the trial court's judgment in its

behalf for $340.00 for storage was against the weight of the evidence. Chet's argues the evidence established that it was entitled to storage up to the time of trial in the amount of $7,680.00, in addition to a tow fee of $600.00 and dolly fee of $200.00.

As stated in answer to Chet's first point, the evidence showed that Chet's had the trailer stored on its lot for 17 days prior to the wrongful retention of possession. At Chet's stated charge for storage of $20.00 per day, the court's judgment on behalf of Chet's for $340.00 was supported by the evidence.

The judgment of the trial court is affirmed.

All concur.