Sandra MEYERS and Reva Teets,
Petitioners–Respondents,

v.

Charles JOHNSON, Respondent,

and

Victor Kennedy, Respondent–Appellant.

No. 26801.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 25, 2006.

W. Tom Norrid of Springfield, MO, for appellant.

Sandra Meyers and Reva Teets, Stockton, respondents acting pro se.

JEFFREY W. BATES, Chief Judge.

Victor Kennedy ("Appellant") has attempted to appeal from a judgment vesting ownership of a mobile home in Sandra Meyers and Reva Teets (collectively, "Respondents"). The mobile home was located on real property which Respondents purchased at a foreclosure sale. The trial court determined the mobile home had been abandoned and, therefore, belonged to Respondents. Because the record unequivocally proves Appellant has no legal, equitable or possessory interest in the mobile home, he lacks standing to appeal from the judgment. The absence of standing deprives this Court of appellate jurisdiction and requires us to dismiss the appeal.

## I. Summary of the Facts

In July 2002, Charles Johnson ("Johnson") owned 1.73 acres of real estate in Dade County, Missouri. A 1980 Golden Venture double-wide mobile home was located on this land. On July 2, 2002, Appellant purportedly "purchased" the mobile home from Johnson by swapping certain items of personal property belonging to Appellant for Johnson's interest in the mobile home. At the time the "purchase" occurred, Appellant was given a bill of sale for the mobile home. He did not receive an assigned certificate of title because Johnson had not been given one when he acquired the mobile home at some earlier point in time.

The Dade County property was mortgaged, and Johnson evidently fell behind in his payments. Upon default, Great Southern Bank ("Great Southern") initiated foreclosure proceedings. Respondents purchased the Dade County land at the foreclosure sale on March 3, 2003. The mobile home, which had been skirted and lacked wheels or axles, was still located on the real estate.

Shortly after the foreclosure sale, Sandra Meyers ("Meyers") and her husband, Donald Woodrone, went to Appellant's place of business in Stockton, Missouri, to talk to him. This visit was prompted by Great Southern's statement to Respondents that Appellant "had an interest" in the mobile home. If Appellant owned the mobile home, Meyers wanted him to move it off of the Dade County property. Appellant offered to sell the mobile home to Meyers, but she declined because Appellant had no title to it. After Appellant learned Meyers was not interested in buying the mobile home, he said he would move it "when he got the money."

In mid-April 2003, Meyers sent Appellant a letter notifying him to move the mobile home within 30 days. Appellant did not respond to the letter, and subsequent attempts by Meyers to contact Appellant by telephone were unsuccessful. In June 2003, Meyers re-established utility service for the mobile home. In early August 2003, she allowed her son, his girlfriend and their two children to begin

living there. Meyers permitted this occupancy of the mobile home because Appellant had not moved it and, to Meyers' knowledge, had made no effort to do so or expressed any intention to do so since March 2003.

In September 2003, Respondents filed a petition for declaratory judgment. Their petition alleged the mobile home had been abandoned, and they were now the rightful owners of that personal property. After a bench trial, the judge entered a judgment vesting ownership of the mobile home in Respondents. The court did so because Respondents presented clear and convincing evidence that the mobile home had been abandoned. This appeal followed.

## II. Discussion and Decision

The issue Appellant asks us to decide in this appeal is whether there was sufficient evidence to support the trial court's determination that the mobile home had been abandoned. For the reasons more fully explained below, we do not reach this issue because Appellant was not aggrieved by the judgment and, therefore, lacks standing to appeal. This conclusion stems from the undisputed fact that Appellant did not receive a properly-assigned certificate of title when he purportedly "purchased" the mobile home in July 2002. As explained below, this defect rendered the sale void and deprived Appellant of any legal, equitable or possessory interest in the mobile home that could be adversely affected by the judgment below.

■■■ Before reaching the merits of any appeal, it is our obligation to determine *sua sponte* whether we have jurisdiction. *City of Brentwood v. Barron Holdings Int'l Ltd.*, 66 S.W.3d 139, 142 (Mo. App.2001). Appellant is not entitled to appeal simply because he was a defendant in the underlying proceeding. *See Briss v. Consolidated Cabs, Inc.*, 295 S.W.2d 391, 392 (Mo.App.1956). In this state, the right to appeal is statutory. *Strawhun v. Strawhun*, 164 S.W.3d 536, 536 (Mo.App.2005). Section 512.020 is the principal statute that creates the right of appeal in a civil case.[1] *In re Estate of Forhan*, 149 S.W.3d 537, 540 (Mo.App.2004). This statute states, in pertinent part, as follows:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:
> ... (5) Final judgment in the case....

Thus, a party to a civil action must be "aggrieved" by the judgment below in order to have any right to appeal. *Parker v. Swope*, 157 S.W.3d 350, 352 (Mo.App.2005); *City of Brentwood*, 66 S.W.3d at 142.

■■■ In a civil action like this one involving a dispute about the ownership of property, a party is aggrieved, within the meaning of § 512.020, when his or her pecuniary or property rights or interests are directly affected by the judgment. *Matter of Foreclosure for Delinquent Land Taxes by Action in REM*, 947 S.W.2d 90, 93 (Mo.App.1997). Ordinarily, a judgment or decree which affects or determines rights in particular property does not aggrieve a party who has no interest or title to the property. *State ex rel. State Highway Comm'n v. Chicago, Burlington and Quincy R.R. Co.*, 539 S.W.2d 760, 762 (Mo.App.1976); *Campbell St. Lumber Co. v. Central Mortgage Co.*, 436 S.W.2d 57, 60 (Mo.App.1968). When the appealing party is not aggrieved by a judgment determining property ownership, we are not vested with jurisdiction over

**1.** All references to statutes are to RSMo Cum. Supp. (2004) unless otherwise specified.

the appeal. *In re Marriage of Lafferty,* 788 S.W.2d 359, 361 (Mo.App.1990). That lack of jurisdiction requires dismissal of the appeal. *Parker,* 157 S.W.3d at 352. To determine the jurisdictional issue, we must decide what title or interest, if any, Appellant acquired in the mobile home in July 2002 when he purchased that personal property without receiving a certificate of title.

The sale of a mobile home in this state is governed by Chapter 700 of the Missouri Revised Statutes. *Dimmitt v. Progressive Cas. Ins. Co.,* 92 S.W.3d 789, 791 (Mo. banc 2003). The statute that controls the disposition of this appeal is § 700.320.1. It states, in pertinent part, as follows:

> The owner of any new or used manufactured home ... shall make application to the director of revenue for an official certificate of title to such manufactured home in the manner prescribed by law for the acquisition of certificates of title to motor vehicles, and the rules promulgated pursuant thereto. *All ... penalties provided by law for the failure to title motor vehicles shall apply to persons required to make application for an official certificate of title by this subsection.*

(Emphasis added.) [2]

■ Section 301.210 prescribes the manner in which a certificate of title for a motor vehicle is acquired.[3] *Dimmitt,* 92 S.W.3d at 791. When the ownership of a motor vehicle is sold or transferred, this statute requires that the holder of the certificate of ownership "endorse on the same an assignment thereof, with warranty of title in form printed thereon ... and deliver the same to the buyer at the time of the delivery to him of such motor vehicle...." § 301.210.1. The buyer is required to present the assigned certificate of ownership to the Director of Revenue and obtain a new title. § 301.210.2. Finally, § 301.210.4 states:

> It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

"Missouri courts have consistently held that by reason of § 301.210, even if accompanied by full payment or physical delivery of possession, the attempted sale of a motor vehicle is fraudulent and void, passing neither legal nor equitable title, unless as a reasonably contemporaneous part of the transaction, the previously issued certificate of ownership with a properly completed assignment by the seller is delivered to the buyer." *State v. Beaird,* 914 S.W.2d 374, 378 (Mo.App.1996). A putative purchaser does not even acquire a right to possess the motor vehicle unless he or she receives a properly-endorsed certificate of title. *Okello v. Beebe,* 930 S.W.2d 40, 43 (Mo.App.1996).

■ In the case at bar, the record unequivocally demonstrates that the sales transaction between Johnson and Appellant did not comply with § 700.320 and § 301.210 because there was no contemporaneous delivery of a properly-endorsed

---

2. Section 700.010(5) RSMo (2000) defines a manufactured home to include a factory-built structure which, when erected on site, contains 320 or more square feet. The mobile home at issue here is a double-wide trailer.

3. All references to § 301.210 are to RSMo (2000).

certificate of title to Appellant. This defect rendered the transaction fraudulent and void. *Okello*, 930 S.W.2d at 43; *Beaird*, 914 S.W.2d at 378.[4] Therefore, Appellant acquired no interest or right of any nature in the mobile home by virtue of his void and unenforceable agreement with Johnson. *See Stuyvesant Ins. Group, Inc. v. Anderson*, 547 S.W.2d 171, 173 (Mo.App. 1977). That being so, Appellant is not aggrieved by the trial court's judgment declaring the mobile home abandoned and vesting title in Respondents. *Id.* The judgment does not directly affect any legal, equitable or possessory interest of Appellant in the mobile home because he has none. "An appeal without statutory sanc-tion confers no authority upon an appellate court except to enter an order dismissing the appeal." *Campbell St. Lumber Co. v. Central Mortgage Co.*, 436 S.W.2d 57, 61 (Mo.App.1968).

Appeal dismissed.

SHRUM, P.J., and BARNEY, J., Concur.

---

4. The same is true of Appellant's alleged predecessor in title, Johnson. His attempt to purchase the mobile home was fraudulent and void because there was no contemporaneous delivery of a properly-endorsed certificate of title to him. Since Johnson never acquired ownership of the mobile home, he could not legally sell that personal property to Appellant. *See Jackson v. Cannon*, 147 S.W.3d 168, 173 (Mo.App.2004).